UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 22-cv-61454-ALTMAN
18-cr-60141-ALTMAN

**RICARDO LEIJA**,

    *Movant*,

v.

**UNITED STATES OF AMERICA**,

    *Respondent*.

_____/

## ORDER ADOPTING REPORT AND RECOMMENDATION

Our Movant, Ricardo Leija, is serving a 300-month sentence for attempting to produce child pornography. *See* Judgment, *United States v. Leija*, No. 18-cr-60141 (S.D. Fla. Oct. 16, 2019), ECF No. 50 at 1. Leija moved to vacate this conviction under 28 U.S.C. § 2255, arguing that his trial counsel's ineffectiveness caused him to plead guilty. *See* Motion to Vacate ("Motion") [ECF No. 1]. The Government responded to the Motion, *see* Response to Motion to Vacate ("Response") [ECF No. 3], and Leija filed a Reply, *see* Reply to Government's Response to Motion ("Reply") [ECF No. 6].

We referred the Motion to Magistrate Judge Patrick M. Hunt for a Report and Recommendation. *See* Order of Referral [ECF No. 7]. On July 29, 2025, Magistrate Judge Hunt recommended that we deny all three grounds Leija raised in the Motion. *See* Report and Recommendation ("R&R") [ECF No. 8] at 13. Magistrate Judge Hunt then cautioned the parties as follows:

> Within fourteen (14) days after being served with a copy of this Report and Recommendation, any party may serve and file written objections to any of the above findings and recommendations as provided by the Local Rules for this district. 28 U.S.C. § 636(b)(1); S.D. FLA. MAG. R. 4(b). The parties are hereby notified that a failure to timely object waives the right to challenge on appeal the district court's order based

>on unobjected-to factual and legal conclusions contained in this Report and Recommendation. 11th Cir. R. 3-1 (2016); *see Thomas v. Arn*, 474 U.S. 140 (1985).

*Id.* at 13–14. Leija filed objections to the R&R. *See* Objections to the Magistrate's Report and Recommendation ("Objections") [ECF No. 9]. The Government didn't object and didn't respond to Leija's Objections. *See generally* Docket. After careful review, we **OVERRULE** Leija's Objections and **ADOPT** Magistrate Judge Hunt's R&R in full.

## THE FACTS

On May 24, 2018, Leija was indicted on one count of attempted production of child pornography, in violation of 18 U.S.C. §§ 2251(a) and (e) (Count 1), and one count of committing a felony offense involving a minor while being a registered sex offender, in violation of 18 U.S.C. § 2260A (Count 2). *See* Indictment, *United States v. Leija*, No. 18-cr-60141 (S.D. Fla. May 24, 2018), ECF No. 2 at 1–3. In December 2017, an undercover law enforcement officer (the "UC") contacted a person—later identified as Leija—claiming to have a "9 year old daughter that [the UC] was sexually active with and had been for several years." Factual Proffer, *United States v. Leija*, No. 18-cr-60141 (S.D. Fla. July 26, 2019), ECF No. 35 at 2. The UC and Leija "discussed the UC sharing his purported 9 year old daughter with other adult males for sexual purposes," and Leija "attempted to have the UC call and play recordings of the UC having sex with his purported 9 year old daughter." *Ibid.* Leija then contacted the UC under a different username and "expressed an interest in traveling to Florida to have sex with the UC's purported 9 year old daughter[.]" *Id.* at 3. Leija also asked the UC "if he would be willing to make a video of his daughter engaged in sexual activity." *Ibid.* During these conversations, "the UC sent Leija pictures that purported to be of the UC's daughter, but were in fact pictures of a human-like doll." *United States v. Leija*, 833 F. App'x 477, 478 (11th Cir. 2020).

The UC agreed to send a video to Leija via "an encrypted thumb drive[.]" Factual Proffer at 3. Leija "told the UC what to do in the video" and "negotiated payment for the video" using a gift card so that "the payment was not traceable to him." *Ibid.* Leija "sent the UC a mailing address for the

FedEx package to be sent" in Las Vegas, Nevada. *Ibid.* Law enforcement confirmed that Leija was communicating with the UC using an "IP address [that] was assigned to an account registered to Ricardo Leija, residing at 917 Saddle Horn Drive, Henderson, NV. This address matched the address of Leija's drives license and the address of his sex offender registration." *Id.* at 4. Federal agents obtained a search warrant for Leija's home, where they met with Leija. *See ibid.* After he was advised of his *Miranda* rights, Leija "agreed to waive those rights" and admitted "to being in online contact with the UC." *Ibid.*

On July 26, 2019, Leija entered into a plea agreement with the Government. *See* Plea Agreement, *United States v. Leija*, No. 18-cr-60141 (S.D. Fla. July 26, 2019), ECF No. 34. "Leija agreed to plead guilty to Count 1, the government agreed to dismiss Count 2 following sentencing, and the parties agreed jointly to recommend a 25-year sentence, which was the statutory mandatory minimum sentence." *Leija*, 833 F. App'x at 478. On October 16, 2019, we sentenced Leija to the mandatory minimum term of 300 months in prison—to be followed by a lifetime of supervised release. *See* Judgment at 2–3.

Leija appealed and advanced only one argument: that we "committed sentencing error by applying a four-level enhancement for portraying sadistic or masochistic conduct pursuant to § 2G2.1(b)(4)(A) of the United States Sentencing Guidelines ('U.S.S.G.')." *Leija*, 833 F. App'x at 478. The Eleventh Circuit affirmed Leija's conviction and sentencing, reasoning that: (1) any error was harmless since "Leija would have received at least a 300 months' sentence with or without the four-level enhancement"; and, in any event, (2) we properly applied the enhancement because "[t]he record evidence here shows that Leija intended for the UC to create a pornographic video featuring the sexual penetration of a nine-year-old girl, which is considered sadistic conduct." *Id.* at 479–80.

Leija then filed a timely § 2255 motion to vacate. *See* R&R at 4 ("As a preliminary matter, all parties agree Leija timely filed this motion."); *cf. Day v. McDonough*, 547 U.S. 198, 201 n.11 (2006)

3

("[S]hould [the Government] intelligently choose to waive a statute of limitations defense, a district court would not be at liberty to disregard that choice."). In that Motion, Leija asserted three claims of ineffective assistance of counsel. In Ground 1, Leija argues that his lawyer failed to inform him "of a viable defense which could have succeeded at trial either through a motion for judgment of acquittal or through a jury's verdict." Motion at 5. According to Leija, he cannot be found guilty of a § 2251(a) offense because "there was never a real minor involved in this investigation." *Id.* at 8. In Ground 2, Leija faults his trial counsel for "failing to move to have the entire case dismissed on due process grounds, where the government initiated contact with the Defendant and engineered the offense from start to finish merely for the sake of pressing criminal charges." *Id.* at 11. Finally, in Ground 3, Leija claims that his trial counsel ignored the fact that Leija never "directly engaged either a real minor or entity playing the role of a fictional minor[.]" *Id.* at 18–19.

## THE LAW

### I. Motions to Vacate Under 28 U.S.C. § 2255

Because collateral review isn't a substitute for a direct appeal, a movant can proceed under § 2255 only in extremely limited circumstances. As relevant here, a prisoner is entitled to relief under § 2255 if (1) "the sentence was imposed in violation of the Constitution or laws of the United States," (2) "the court was without jurisdiction to impose such sentence," (3) "the sentence was in excess of the maximum authorized by law," or (4) the sentence is "otherwise subject to collateral attack." § 2255(a); *accord McKay v. United States*, 657 F.3d 1190, 1194 n.8 (11th Cir. 2011). In other words, "relief under § 2255 is reserved for transgressions of constitutional rights and for that narrow compass of other injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice." *Richards v. United States*, 837 F.2d 965, 966 (11th Cir. 1988) (cleaned up); *see also United States v. Frady*, 456 U.S. 152, 165 (1982) ("[W]e have long and consistently affirmed that a collateral challenge will not do service for an appeal."). If a court grants a § 2255 claim, the

4

court "shall vacate and set aside the judgment and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." § 2255(b). The movant bears the burden of proving his § 2255 claim. *See Beeman v. United States*, 871 F.3d 1215, 1222 (11th Cir. 2017) ("We rest our conclusion that a § 2255 movant must prove his [claim] on a long line of authority holding that a § 2255 movant bears the burden to prove the claims in his § 2255 motion." (cleaned up)), *cert. denied*, 139 S. Ct. 1168 (2019).

## II. Ineffective Assistance of Counsel

The Sixth Amendment affords a criminal defendant the right to "the Assistance of Counsel for his defen[s]e." U.S. CONST. amend. VI. "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland v. Washington*, 466 U.S. 668, 686 (1984). To prevail on a claim of ineffective assistance of counsel, a habeas litigant must demonstrate "that (1) his counsel's performance was deficient and 'fell below an objective standard of reasonableness,' and (2) the deficient performance prejudiced his defense." *Raleigh v. Sec'y, Fla. Dep't of Corr.*, 827 F.3d 938, 957 (11th Cir. 2016) (quoting *Strickland*, 466 U.S. at 687–88). This same standard applies to alleged errors made by both trial and appellate counsel. *See Farina v. Sec'y, Fla. Dep't of Corr.*, 536 F. App'x 966, 979 (11th Cir. 2013) ("A claim of ineffective assistance of appellate counsel is evaluated under the same standard as for trial counsel.").

To establish the first prong (deficiency), "a petitioner must [show] that *no* competent counsel would have taken the action that his counsel did take[.]" *Chandler v. United States*, 218 F.3d 1305, 1315 (11th Cir. 2000) (en banc) (emphasis added). So, if "some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial," counsel could not have performed deficiently. *Waters v. Thomas*, 46 F.3d 1506, 1512 (11th Cir. 1995) (quoting *White v. Singletary*, 972 F.2d 1218, 1220 (11th Cir. 1992)).

As for the second prong (prejudice), "a defendant is prejudiced by his counsel's deficient performance if 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Porter v. McCollum*, 558 U.S. 30, 40 (2009) (quoting *Strickland*, 466 U.S. at 694). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. To succeed on this prong, a defendant must show that "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687. If the defendant pleads guilty, the prejudice prong is modified so that the defendant must instead show "that there is a reasonable probability, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

### III.     Review of a Report and Recommendation

District courts must review *de novo* any part of a magistrate judge's disposition that has been properly objected to. *See* FED. R. CIV. P. 72(b)(3). Although Rule 72 itself is silent on the standard of review, the Supreme Court has acknowledged that Congress's intent was to require a *de novo* review only where objections have been properly filed—and not when neither party objects. *See Thomas v. Arn*, 474 U.S. 140, 150 (1985) ("It does not appear that Congress intended to require district court review of a magistrate [judge]'s factual or legal conclusions, under a *de novo* or any other standard, when neither party objects to those findings."). "If no objection or only [a] partial objection is made to the magistrate judge's report, the district judge reviews those unobjected portions for clear error." *Macort v. Prem, Inc.*, 208 F. App'x 781, 784 (11th Cir. 2006) (quoting *Johnson v. Zema Sys. Corp.*, 170 F.3d 734, 739 (7th Cir. 1999) (cleaned up)).

When a party timely objects to a magistrate judge's report and recommendation, the district judge must make a *de novo* determination "of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); *see also Leonard v.*

6

*Polk Cnty. Sheriff's Dep't*, 2019 WL 11641375, at *1 (M.D. Fla. Apr. 16, 2019) (Jung, J.). "Parties filing objections to a magistrate's report and recommendation must specifically identify those findings objected to. Frivolous, conclusive, or general objections need not be considered by the district court." *United States v. Tardon*, 493 F. Supp. 3d 1188, 1209 (S.D. Fla. 2020) (Lenard, J.) (quoting *Marsden v. Moore*, 847 F.2d 1536, 1548 (11th Cir. 1988)). The "[f]ailure to object to the magistrate [judge]'s factual findings after notice precludes a later attack on these findings." *Lewis v. Smith*, 855 F.2d 736, 738 (11th Cir. 1988) (citation omitted).

## ANALYSIS

Magistrate Judge Hunt recommended that we reject all three of Leija's grounds for relief. *First*, Magistrate Judge Hunt concluded that "an attempt prosecution does not require the Government to prove the offense involved an actual child" and that § 2251(a) applies "to a defendant who attempted to produce child pornography by communicating with only an adult intermediary[.]" R&R at 8–9. *Second*, Magistrate Judge Hunt rejected Leija's contention that this case involved "outrageous government conduct" because "the facts as set forth in the agreed factual basis do not fall so far outside the norm of undercover criminal investigations as to support a defense of outrageous government misconduct." *Id.* at 10–11. *Third*, Magistrate Judge Hunt found that Leija "misread" § 2251(a), which doesn't "require[ ] contact with an actual minor." *Id.* at 12. Citing Eleventh Circuit caselaw, Magistrate Judge Hunt explained that "[s]exual predators 'can persuade, entice, or coerce a minor to engage in sexual activity through an adult intermediary because sexual predators can and do attempt to persuade children to engage in sexual activity through the victim's parents or guardians.'" *Ibid.* (quoting *United States v. Lee*, 603 F.3d 904, 913 (11th Cir. 2010)).

Leija objects to Magistrate Judge Hunt's handling of each of the Motion's three grounds for relief. *See generally* Objections at 3–6. After conducting a *de novo* review of the Motion and the R&R, we overrule Leija's objections.

7

### I.   Grounds 1 and 3: Failure to Discuss Potential Defenses

Since Grounds 1 and 3 of the Motion raise similar arguments, we'll address them together. Leija argues that his trial counsel was ineffective for failing to advise him of two potential defenses to the charges he faced under 18 U.S.C. §§ 2251(a) and (e). Because counsel "fail[ed] to inform" Leija about these "viable defense[s]," he argues, his plea was "ill-advised, uninformed, and involuntary[.]" Motion at 5.[1] One possible defense (which Leija outlines in Ground 1) is Leija's belief that he cannot be guilty of attempting to produce child pornography because "criminal liability does not extend to virtual or fictious children, because no actual child [is] being exploited." *Id.* at 7 (citing *Ashcroft v. Free Speech Coalition*, 535 U.S. 234, 240 (2002)). In support of this claim, Leija directs us to the Eleventh Circuit's pattern jury instruction for § 2251(a) offenses, which requires the government to prove that "[a]n *actual minor*, that is, a real person who was less than 18 years old, was depicted[.]" *Ibid.* (emphasis added) (quoting 11TH CIR. PATTERN JURY INSTRUCTION (CRIMINAL) O82 (2022)).

Leija makes a similar argument in Ground 3. He says there that § 2251(a) "is phrased in the disjunctive" but that the Indictment "specifically alleged he 'attempted to employ, use, persuade, induce, entice, and coerce a minor to engage in sexually explicit conduct' to produce a visual depiction." *Id.* at 18. Although Leija concedes that the statute *also* criminalizes "having the minor assist another person in making a sexually explicit depiction[,]" he claims that "the statutory language chosen by the government" in the Indictment "required direct engagement with a minor[.]" *Id.* at 18–19. Since the Government had to prove that he "directly engaged [with a] minor victim," Leija explains, he had

---

[1] "[A]lthough 'a defendant does not waive an ineffective assistance of counsel claim simply by entering a plea,' an ineffective assistance of counsel claim raised in a § 2255 motion is waived by a guilty plea where the movant's 'claim of ineffective assistance is not about his decision to plead guilty.'" *Shell v. United States*, 2023 WL 3338631, at *1 (11th Cir. May 10, 2023) (first quoting *Arvelo v. Sec'y, Fla. Dep't of Corr.*, 788 F.3d 1345, 1348 (11th Cir. 2015); and then quoting *Wilson v. United States*, 962 F.2d 996, 997 (11th Cir. 1992)). Since Leija alleges that counsel's various errors rendered his plea involuntary, we find that Leija *didn't* waive his claims by pleading guilty. *See Arvelo*, 788 F.3d at 1348 ("[T]he Supreme Court has expressly held that a defendant does not waive an ineffective assistance of counsel claim simply by entering a plea.").

8

a viable defense because he "only texted with the agent and the minor was fictional." *Id.* at 19. In short, Leija claims in Grounds 1 and 3 that his trial counsel failed to tell him about two potentially meritorious defenses—both of which arise from the fact that he never communicated with a real minor.

Counsel *can* be ineffective for failing to advise a client about a potential defense, but only if that defense *could have* succeeded at trial. *See Barritt v. Sec'y, Fla. Dep't of Corr.*, 968 F.3d 1246, 1253–54 (11th Cir. 2020) ("Where the alleged error of counsel is a failure to advise the defendant of a potential affirmative defense to the crime charged, the resolution of the 'prejudice' inquiry will depend largely on whether the affirmative defense likely would have succeeded at trial." (quoting *Hill*, 474 U.S. at 59)); *see also Lee v. United States*, 582 U.S. 357, 365 (2017) ("The dissent contends that a defendant must also show that he would have been better off going to trial. That is true when the defendant's decision about going to trial turns on his prospects of success and those are affected by the attorney's error[.]"). And we agree with Magistrate Judge Hunt that Leija *hasn't* presented "a viable defense under the facts of this case and binding Eleventh Circuit precedent." R&R at 9–10.

Starting with Ground 1, Magistrate Judge Hunt cited several Eleventh Circuit cases holding that attempted production of child pornography under §§ 2251(a) and (e) "does not require the Government to prove the offense involve an actual child." R&R at 8. In *United States v. Lee*, for example, the Eleventh Circuit "squarely rejected the argument that 'because the defendant did not directly communicate with a minor or a person he believed to be a minor, his conduct was not criminally proscribed by the language of [§§ 2251(a) and (e)].'" 603 F.3d 904, 912–13 (11th Cir. 2010) (quoting *United States v. Murrell*, 368 F.3d 1283, 1285 (11th Cir. 2004)). And the Eleventh Circuit has repeatedly reaffirmed this principle, noting that "[t]he crime of 'attempted production of child pornography' under § 2251(a) and (e) 'does not require an actual minor victim,' so long as the defendant believed the victim to be' underage." *Lynch v. United States*, 783 F. App'x 904, 908 (11th Cir.

9

2019) (cleaned up) (quoting *Lee*, 603 F.3d at 912–13); *see also United States v. Orr*, 819 F. App'x 756, 766 (11th Cir. 2020) ("For [§ 2251(a)], a minor can be a law enforcement officer acting in an undercover capacity or a fictious minor."); *cf. United States v. Godwin*, 399 F. App'x 484, 487 (11th Cir. 2010) ("Moreover, we have clearly held that an actual minor victim is not required for an attempt conviction under § 2422(b); rather, the defendant's belief that a minor was involved is sufficient to sustain the conviction.").

Resisting this binding precedent, Leija offers two objections. *First*, Leija says that *Lee*, *Orr*, and *Lynch* are distinguishable from his case because each "concerned the sufficiency of the evidence and not the availability of a defense." Objections at 3. This is a distinction without a difference. *Lee* plainly held that the government can sustain a conviction under §§ 2251(a) and (e), *even without* a real minor, if it proves that the defendant was "attempting to use a fictitious minor to produce pornography[.]" 603 F.3d at 913; *see also Caniff v. United States*, 2024 WL 2815635, at *8 (M.D. Fla. June 3, 2024) (Davis, J.) (denying a § 2255 motion that relied on the same argument Leija advances here because "a conviction under § 2251(a) does not require an actual minor victim"). Since Leija admitted that he thought the UC was going to produce a video of his 9-year-old daughter "engaged in sexual activity[,]" his conduct satisfies the elements of § 2251(a). Factual Proffer at 3.

*Second*, Leija directs us to the Eleventh Circuit's pattern jury instructions for § 2251(a) offenses, which require the government to prove that "[a]n *actual minor*, that is, a real person who was less than 18 years old, was depicted[.]" Objections at 3 (emphasis added). "But jury instructions are not binding law," and *Lee* and its progeny supersede any conflicting language in a pattern jury instruction. *United States v. Solomon*, 136 F.4th 1310, 1321 (11th Cir. 2025). Moreover, the jury instruction Leija relies on applies to *substantive counts* of production of child pornography under § 2251(a)—not *attempted* production of child pornography under §§ 2251(a) and (e), which is what Leija was charged with here. And, as we've said, *that's* a distinction that matters because "[t]he crime of attempted production of

child pornography under § 2251(a) and (e) does not require an actual minor victim, so long as the defendant believed the victim to be underage." *Lynch*, 783 F. App'x at 908 (cleaned up).

In Ground 3 of his Motion, Leija contends that § 2251(a) "requires some direct conduct with [a] minor." Motion at 18. Again, Magistrate Judge Hunt correctly found that Ground 3 is squarely foreclosed by *Lee*. *See* R&R at 12 ("But Leija has misread the statute, believing that it requires contact with an actual minor. As discussed in the first section of this Report and Recommendation, the Eleventh Circuit addressed this argument in *Lee*."). The Eleventh Circuit has held that §§ 2251(a) and (e) apply "to an individual who . . . attempted to produce child pornography by communicating with only an adult intermediary," since it specifically "prohibits attempting to employ or use a minor for the purpose of producing child pornography." *Lee*, 603 F.3d at 913 (cleaned up); *see also United States v. Moran*, 57 F.4th 977, 980 n.3 (11th Cir. 2023) ("It is undisputed here that a defendant can violate § 2251(a) and (e) even without communicating directly with a minor."). Although Leija continues to object to Magistrate Judge Hunt's reliance on *Lee*, *see* Objections at 3, we've already overruled those same objections in our discussion of Ground 1, and we won't repeat that analysis here.

But this doesn't totally resolve Ground 3. Leija *also* argues that the Indictment "charged him with violating 18 U.S.C. § 2251 under just one of the multiple disjunctive ways" and that the "statutory language chosen by the [G]overnment required direct engagement with a minor[.]" Motion at 18–19. Magistrate Judge Hunt summarily rejected this argument—concluding that, "where an indictment charges in the conjunctive several means of violating a statute, a conviction may be obtained on proof of only one of the means[.]" R&R at 13 (quoting *United States v. Gutierrez*, 745 F.3d 463, 473 (11th Cir. 2014)). Leija objects, claiming that "that his defense based on the conjunctive phrasing of the indictment would have become a plausible defense both at trial and in a motion for judgment of acquittal," irrespective of *Gutierrez*. Objections at 4.

11

We disagree, but we also think the Indictment's language is neither here nor there. The Indictment charges Leija with attempting to "employ, use, persuade, induce, entice, and coerce a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct," in violation of 18 U.S.C. §§ 2251(a) and (e). Indictment at 1. Leija is right that this language is *narrower* than the statute, which applies to anyone "who employs, uses, persuades, induces, entices, or coerces any minor to engage in, *or* who has a minor assist any other person to engage in . . . any sexually explicit conduct for the purpose of producing any visual depiction of such conduct[.]" 18 U.S.C. § 2251(a) (emphasis added). But this omission is irrelevant.

Here, again, Leija again ignores *Lee*'s holding, which is that "one can persuade, entice, or coerce a minor to engage in sexual activity through an adult intermediary because 'sexual predators can and do attempt to persuade children to engage in sexual activity through the victim's parents or guardians.'" 603 F.3d at 913 (cleaned up) (quoting *United States v. Nestor*, 574 F.3d 159, 161–62 & n.4 (3d Cir. 2009)); *cf. United States v. Unrein*, 688 F. App'x 602, 608–09 (11th Cir. 2017) (holding that a defendant "may be properly convicted" of attempted child enticement *even if* he "communicates only with an adult intermediary who can influence a minor"). Since a sexual predator (like Leija) *can* "employ, use, persuade, induce, entice, or coerce" a minor to engage in sexually explicit conduct by contacting an adult intermediary, the Indictment's failure to specifically charge Leija with "having the minor assist another person in making a sexually explicit depiction" *didn't* require the Government to prove that Leija "directly engaged" with a real minor. Motion at 18.

Trial counsel, in short, couldn't have been ineffective by failing to inform Leija about these meritless defenses before the guilty plea. *See Barritt*, 968 F.3d at 1255 ("In failing to advise [the defendant] of a meritless defense when he suffered no prejudice, his counsel did not render ineffective assistance[.]"); *see also Pinkney v. Sec'y, DOC*, 876 F.3d 1290, 1297 (11th Cir. 2017) ("[A]n attorney will not be held to have performed deficiently for failing to perform a futile act, one that would not have

gotten his client any relief."). We thus **OVERRULE** Leija's Objections to Magistrate Judge Hunt's recommendations on Grounds 1 and 3.

## II.     Ground 2: Failure to Raise Due-Process Argument

In Ground 2, Leija claims that his trial counsel "rendered ineffective assistance of counsel by failing to move to have the entire case dismissed on due process grounds, where the government initiated contact with the Defendant and engineered the offense from start to finish merely for the sake of pressing criminal charges." Motion at 11. Leija calls this "outrageous police conduct" and suggests that the police flagrantly violated his due-process rights by "manufactur[ing] a victimless crime for the sole purpose of arresting Defendant[.]" *Id.* at 11–12. Magistrate Judge Hunt rejected this claim, noting that "posting online ads and communicating with a suspect about 'his desire to abuse a child'" *doesn't* constitute "outrageous conduct." R&R at 11 (quoting *United States v. Castaneda*, 997 F.3d 1318, 1326 (11th Cir. 2021)). In fact, Magistrate Judge Hunt continued, neither the Eleventh Circuit nor the Supreme Court has *ever* barred a prosecution because of "a defense of outrageous government conduct." *Ibid.*

The "outrageous government conduct" defense comes from "the Supreme Court's recognition of the possibility that law enforcement's tactics may be 'so outrageous that due process principles would absolutely bar the government from invoking judicial processes to obtain a conviction.'" *United States v. Cannon*, 987 F.3d 924, 941 (11th Cir. 2021) (quoting *United States v. Russell*, 411 U.S. 423, 431–32 (1973)). The Eleventh Circuit has recognized the possibility that "a conviction may be overturned where government involvement in criminal schemes is so extensive that it may be characterized as 'outrageous'"—*viz.*, when the Government's conduct "violates fundamental fairness, shocking to the universal cause of justice." *United States v. Augustin*, 661 F.3d 1105, 1122 (11th Cir. 2011) (cleaned up). But "this defense has never succeeded [in the Eleventh Circuit] or in the Supreme Court." *Cannon*, 987 F.3d at 941; *see also United States v. Jayyousi*, 657 F.3d 1085, 1111 (11th Cir. 2011)

("We have never applied the outrageous government conduct defense and have discussed it only in dicta. Several of our sister circuits have either rejected this defense completely, or have been sharply critical of the defense[.]" (cleaned up)).

Leija justifies his outrageous-government-conduct defense by observing that the Government "initially contacted [him]" and by insisting that he *wasn't* "contemplating or engaged in similar activities prior to an undercover agent soliciting [him] about [a] fictitious daughter." Objections at 3–4. But it's "commonplace" for law enforcement to communicate with suspected child predators about their "desire to abuse a child[.]" *Castaneda*, 997 F.3d at 1326. That the Government contacted Leija *first* is thus irrelevant. *See Cannon*, 987 F.3d at 942 ("Merely presenting defendants with a non-unique opportunity to commit a crime, of which they are more than willing to take advantage, does not amount to outrageous government conduct."); *Augustin*, 661 F.3d at 1123 ("The evidence in this case does not show that the government ran the entire operation with only meager assistance from the appellants. Rather, the government only provided means to those who were willing and predisposed. This comports with the basic requirements of the Due Process Clause." (cleaned up)).[2] Since "the facts set forth in the agreed factual basis do not fall so far outside the norm of undercover criminal

---

[2] Leija's suggestion that he had never "engaged in prior similar activities" is also patently false. Objections at 4. Law enforcement learned about Leija because he "was communicating about child pornography" with another person who had recently been arrested "for enticement of a minor in the Southern District of Florida." Factual Proffer at 1. Leija was also "a registered sex offender for a 2011 conviction for possession of child pornography." *Id.* at 4. And, when the UC told Leija that he (the UC) was "sexually active" with his "purported 9 year old daughter[,]" Leija talked to the UC about "sharing" the child "with other adult males for sexual purposes." *Id.* at 2. This, in sum, *isn't* a man who was pushed against his will into committing a crime by "outrageous government conduct." *Cf. Cannon*, 987 F.3d at 942 ("Cannon and Holton also declined multiple opportunities to withdraw from the robbery, were undeterred by the assured presence of armed guards at the stash house, and were willing to provide the know-how and their own guns necessary to carry out the robbery. During the recorded meetings, Holton and Cannon readily filled in the details of the plan, informing the UC detective what they would do before, during, and after the robbery. Under the totality of the circumstances, Holton and Cannon have not shown the government's conduct was outrageous or fundamentally unfair or 'shocking to the universal sense of justice.'").

investigations[,]" we agree with Magistrate Judge Hunt that Leija's outrageous-government-conduct defense fails. R&R at 11.

The "outrageous government conduct" defense—if it even exists—can only be invoked "in the rarest and most outrageous cases." *Augustin*, 661 F.3d at 1123 (cleaned up). And there's just nothing rare about the facts of our case. Indeed, as the Eleventh Circuit has explained, Leija was caught by a law enforcement tactic that's *routinely deployed* to stop child predators. *See Castaneda*, 997 F.3d at 1326 ("As for law enforcement's generic sting operation of posting a Craigslist ad and communicating with Castaneda about his desire to abuse a child, there is no legal basis for challenging as outrageous those commonplace, and common sense, tactics."). Since "[a] lawyer cannot be deficient for failing to raise a meritless claim[,]" *Freeman v. Att'y Gen.*, 536 F.3d 1225, 1233 (11th Cir. 2008), we **OVERRULE** Leija's Objections to Magistrate Judge Hunt's recommendation on Ground 2.[3]

## EVIDENTIARY HEARING

We won't hold an evidentiary hearing in this case because Leija's claims are facially meritless. *See Schriro v. Landrigan*, 550 U.S. 465, 474 (2007) ("[I]f the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing.").

---

[3] We'll briefly touch on Leija's last objection, in which he argues that Magistrate Judge Hunt erroneously applied the Supreme Court's decision in *Lee v. United States*, 582 U.S. 357 (2017). *See* Objections at 4 ("Leija further objects to the Magistrate's application of *Lee v. U.S.* to his three grounds."). Leija alleges that Magistrate Judge Hunt "overlooked that [*Lee*] focused on attorney errors that affect the defendant's decision-making on whether to exercise the fundamental right to a trial or accept a plea" and failed to consider the fact that Leija's claims "turn[ ] on whether he had any defense." *Id.* at 5; *see also ibid.* ("In Leija's case, the determining factor was whether he had any viable defenses."). Even assuming that Magistrate Judge Hunt misapplied *Lee* (which we don't think he did), this objection is still meritless because—for all the reasons we've discussed—each of Leija's proposed defenses is meritless and thus cannot sustain a viable ineffective-assistance-of-counsel claim. *See Barritt*, 968 F.3d at 1255 ("In failing to advise [the defendant] of a meritless defense when he suffered no prejudice, his counsel did not render ineffective assistance[.]"); *Pinkney*, 876 F.3d at 1297 ("[A]n attorney will not be held to have performed deficiently for failing to perform a futile act, one that would not have gotten his client any relief.").

## CERTIFICATE OF APPEALABILITY

A Certificate of Appealability ("COA") is appropriate only when the movant makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To deserve a COA, therefore, the movant must show that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). "Where a district court has disposed of claims . . . on procedural grounds, a COA will be granted only if the court concludes that 'jurists of reason' would find it debatable both 'whether the petition states a valid claim of the denial of a constitutional right' and 'whether the district court was correct in its procedural ruling.'" *Eagle v. Linahan*, 279 F.3d 926, 935 (11th Cir. 2001) (quoting *Franklin v. Hightower*, 215 F.3d 1196, 1199 (11th Cir. 2000)). Because no reasonable jurist would debate our decision to adopt Magistrate Judge Hunt's R&R and deny all three of Leija's grounds for relief, we won't issue a COA here.

## CONCLUSION

Having carefully reviewed the record and the governing law, we hereby **ORDER AND ADJUDGE** as follows:

1. Leija's Objections to the R&R [ECF No. 9] are **OVERRULED**. We **ACCEPT** and **ADOPT** Magistrate Judge Hunt's R&R [ECF No. 8] in full.
2. Leija's Motion to Vacate [ECF No. 1] is **DENIED**.
3. Any request for a COA is **DENIED**. Any other pending motions, including any requests for an evidentiary hearing, are **DENIED**.
4. The Clerk of Court shall **CLOSE** this case.

**DONE AND ORDERED** in the Southern District of Florida on September 2, 2025.

_____
**ROY K. ALTMAN**
**UNITED STATES DISTRICT JUDGE**

cc:   counsel of record